UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNELL ROBIN DUNN, CDCR #BG-1620, Plaintiff, v. I. RODRIGUEZ, Correctional Officer; J. LUNA, Correctional Officer; L. ROMERO, Correctional Officer; D. COSTELLO, Correctional Officer, Defendants. | Case No.: 26-cv-04641-AJB-SBC **ORDER: GRANTING MOTION TO PROCEED IN FORMA PAUPERIS** **AND** **SCREENING COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2) AND 1915A(b)** **(Doc. Nos. 2, 3)** |

Ronnell Robin Dunn, a state prisoner proceeding *pro se*, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, along with a motion to proceed *in forma pauperis* ("IFP"). (Doc. Nos. 1–2.)

In his Complaint, Dunn alleges that Defendants violated his constitutional rights by physically and sexually assaulting him, denying him medical care, and harassing him while he was incarcerated at Richard J. Donavan State Prison ("RJD"). (Doc. No. 1 at 4–5, 20.) As explained below, the Court **GRANTS** Dunn's IFP motion and **SCREENS** his Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A(b). The Court finds that Dunn adequately alleges Eighth Amendment claims against Defendants Rodriguez and Romero.

But the Court finds that he fails to state any other plausible claim for relief or any claim against Defendants Luna and Costello. The Court, therefore, **ORDERS** Dunn to file either an amended complaint that addresses the pleading deficiencies discussed below or a Notice of Intent to Proceed with the Eighth Amendment claims alleged against Defendants Rodriguez and Romero only.

## I. Motion to Proceed IFP

Generally, anyone initiating a civil action in a U.S. district court must pay a $405 filing fee, which includes a $350 statutory fee and a $55 administrative fee (although anyone granted IFP status is excused from paying the administrative fee). *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). If a plaintiff fails to prepay the entire fee, the lawsuit will not go forward unless the plaintiff's IFP motion is granted under 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

A prisoner filing an IFP motion must submit a "certified copy of the trust fund account statement (or institutional equivalent)," which must cover "the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).

Even if the court grants IFP status, the prisoner must pay the statutory filing fee. Payments, however, are determined based on the prisoner's available resources. The determination is as follows. First, courts calculate an initial filing fee payment. This initial fee is twenty percent of the larger of two amounts: either the average monthly deposits in the trust fund account over the past six months, or the average monthly balance in the account for the past six months. *See* 28 U.S.C. § 1915(b)(1), (4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Nevertheless, if a prisoner plaintiff has insufficient assets, no initial filing fee is required. Second, once the IFP motion is granted and the initial fee is charged, the remaining balance must be paid in installments. 28 U.S.C. § 1915(b)(1)–(2); *Bruce*, 577 U.S. at 84.

Dunn's IFP motion includes a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report and Prison Certificate attested to by a CDCR trust account official. (Doc. No. 2 at 4–5.) His average monthly balance is $0.33, his monthly deposits average $0.24, and his available balance is $0.18. (*Id*. at 5.)

The Court therefore **GRANTS** Dunn's IFP motion. No initial partial fee will be charged since it appears Dunn presently has no means to pay. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action" simply because "the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on "failure to pay . . . due to the lack of funds available to him when payment is ordered"). Dunn is nevertheless required to pay the full $350 filing fee in installments as 28 U.S.C. § 1915(b)(2) calls for.

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A. Standard of Review

Because Dunn is a prisoner proceeding IFP, federal law requires pre-screening of Dunn's claims before any defendants are required to file an answer. 28 U.S.C. §§ 1915(e)(2), 1915A(b). Pre-screening means that the Court must dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*) (28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted). Likewise, § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6).” *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).

Rule 12(b)(6) requires that a complaint “contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). “Determining whether a complaint states a plausible claim for relief” is “a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.” *Id.* at 679 (citation omitted).

“Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights.” *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (citing 42 U.S.C. § 1983). The statute, though “not itself a source of substantive rights, . . . provides a method for vindicating federal rights elsewhere conferred.” *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (citation and internal quotation marks omitted). “To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law.” *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011).

Complaints filed *pro se* must be “liberally construed, particularly where civil rights claims are involved.” *Balistreri v. Pacifica Police Dep’t*, 901 F.2d 696, 699 (9th Cir. 1990) (citations omitted).

**B. Allegations in the Complaint**

Dunn names four defendants, Correctional Officers I. Rodriguez, J. Luna, L. Romero, and D. Costello, across three counts. Dunn describes himself as a “black male raised in poverty,” who is receiving in-custody mental health treatment for Post-Traumatic Stress Disorder originating from sexual abuse he suffered between 2001 and 2003 at the hands of officers in the juvenile detention system. (Doc. No. 1 at 3.)

Count One alleges that Officer Rodriguez violated Dunn’s Eighth Amendment right on June 17, 2025, around 9:00 a.m., when Rodriguez touched Dunn’s genitals in a sexual

manner for ten seconds and forcefully grabbed his penis, causing extreme pain. (Doc. No. 1 at 4–5.) According to Dunn, Rodriguez was looking in the direction of his penis while gratuitously touching him and asking Dunn, "Is that all of you, [racial slur]?" (*Id.* at 4.) Dunn claims this touching took place in front of Facility E, Housing Unit 24, when Rodriguez conducted a "body search" on Dunn while Dunn was engaged in "therapeutic recreation." (*Id.* at 4.)

Dunn states that he contemporaneously complained to Rodriguez about the encounter by informing Rodriguez that he is "a victim of 'sex abuse' and that this experience was 'not right.'" (*Id.* at 4–5.) Dunn indicates that Rodriguez did not find contraband on his person but states the interaction escalated when Dunn "began yelling: 'Stop grabbing my dick!'" (*Id.* at 5.) This triggered the arrival of other officers, including Costello, who "placed [Dunn] in handcuffs, using disproportionate force," as Dunn "was compliant during the episode." (*Id.* at 5.) When he reported being in pain and requested medical attention, Dunn states Rodriguez, Costello, and Luna all denied him access to medical care. (*Id.*) He relates that he filed a written request for health care at 10:00 a.m. and was seen by a nurse and treated at 12:00 p.m. when he experienced pain while urinating. (*Id.*) Dunn alleges that the treating nurse "conclud[ed] with reasonable medical certainty that [his] genitals had been bruised to the point of causing serious pain." (*Id.*) By 3:00 p.m. that day, Dunn asserts, he began to need more intensive mental health care due to the alleged sexual assault by Rodriguez. (*Id.* at 6.)

In Count Two, Dunn focuses on his conversation with Luna, whom Dunn said refused to talk to him about his claim that Rodriguez sexually assaulted Dunn during the pat down. (*Id.* at 7.) Dunn also states that Luna ordered Costello to escort Dunn to his housing unit after the incident instead of taking him to receive medical care. (*Id.*) Since this meant that Dunn did not receive medical attention until two hours later, Dunn alleges Luna violated the Eighth Amendment through deliberate indifference "toward [his] serious and deepening medical pain." (*Id.*)

In Count Three, Dunn alleges that, following the incident with Rodriguez, Officer Romero forcefully handcuffed Dunn and, "[w]ithout any warning," "slammed his knee violently against [Dunn's] upper back while applying his whole body weight . . . upon [Dunn's] body while he sadistically and maliciously laughed." (*Id.* at 8.) Dunn alleges that Romero's use of force came "absent provocation or any resistance," saying he "complied with all orders to lie flat on the ground, with [his] face to the concrete." (*Id.*) Per Dunn, Romero's contact left him with "contusions, swelling, bruising, and additional medical detriment." (*Id.*)

Finally, Dunn alleges that on the day of the assault and afterwards, Romero loudly called him a "snitch" and a "rat" and other epithets. (*Id.*) A separate attachment indicates that Romero verbally labeled Dunn a "snitch" on six dates throughout August and October of 2025. (*Id.* at 20.) Dunn alleges Romero "continues to harass him and threaten the use of force to silence [his] practice of free speech. (*Id.* at 8.)

Dunn seeks an injunction to prevent, *inter alia*, Defendants "from ever contacting [him] in person" and seeks nearly $60 million in compensatory and punitive damages. (*Id.* at 10.)

**C. Discussion**

**1. Sexual Assault (Count One) – Defendant Rodriguez**

When an Eighth Amendment claim is based on a sexual assault, the Eighth Amendment is violated "when a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).

Caselaw "recognizes that there are occasions when legitimate penological objectives within a prison setting require invasive searches. It also accounts for the significant deference courts owe to prison staff, who work in challenging institutional settings with unique security concerns." *Id.* at 1144–45. As such, "where the allegation is that a guard's

conduct began as an invasive procedure that served a legitimate penological purpose, the prisoner must show that the guard's conduct exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the procedure." *Id.* at 45.

Dunn alleges Rodriguez violated his Eighth Amendment rights on June 17, 2025, by touching his genitals in a sexual and violent way, causing him serious pain and bruising. (Doc. No. 1 at 5.) The Complaint does not suggest any need justifying the use of such force. *Hudson*, 503 U.S. at 7. Rather, Dunn maintains he was compliant with the contraband search done by Rodriguez and no contraband was detected. (Doc. No. 1 at 3–4.) Therefore, as currently pleaded against Rodriguez in Count One, Dunn's Complaint is sufficient to survive the threshold set for *sua sponte* screening as required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *Iqbal*, 556 U.S. at 678; *Hudson*, 503 U.S. at 7; *Wood v. Beauclair*, 692 F.3d 1041, 1050 (9th Cir. 2012) (sexually touching and harassing inmate during a strip search "in a manner designed to demean and humiliate" can state an Eighth Amendment claim); *Patrick v. McDermott*, No. SA CV 16-318-PLA, 2019 WL 10255472, at *10 (C.D. Cal. June 24, 2019) (prisoner's allegations that correctional officers "fondled" his genitals during pat down search enough to survive motion to dismiss).

**2. Excessive Force (Count One) – Defendant Costello**

Unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). For claims arising out of the use of excessive physical force, the Court considers "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (*per curiam*) (citing *Hudson*, 503 U.S. at 7) (internal quotation marks omitted). Factors relevant to this inquiry include: "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321(1986)). "There is no legitimate need to use any force against an inmate who is neither violating prison rules nor reasonably believed

to pose a security threat." *Stewart v. Ayala*, No. 21-cv-9638-RGK-AS, 2023 WL 2993042, at *2 (C.D. Cal. Mar. 8, 2023) (citing *Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir. 1991)).

Dunn, however, fails to state a plausible Eighth Amendment claim against Officer Costello, whom Dunn alleges only "placed [him] in handcuffs, using disproportionate force" as Dunn "was compliant during the episode." (*Id.* at 5.) Dunn's conclusory allegation points to nothing of factual substance. Dunn does not appear to contest that there was a basis to handcuff him under the circumstances, and he provides no factual information from which the Court can assess the degree of force used by Costello. Therefore, he fails to plead a plausible excessive force claim against Defendant Costello. The claim against Costello is dismissed.

**3. Excessive Force (Count Three) – Defendant Romero**

Dunn's excessive force claim against Romero, however, is more detailed. He claims Romero "slammed his knee violently against [Dunn's] upper back while applying his whole body weight" to Dunn even though Dunn was already not resisting and lying face-down on the ground. (Doc. No. 1 at 8.) Considered liberally in the light most favorable to Dunn, these allegations are enough to state a claim for excessive force against Romero in count three. *See Iqbal*, 556 U.S. at 678; *Hudson*, 503 U.S. at 7; *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 797 (9th Cir. 2018) ("More than *de minimis* force applied for no good faith law enforcement purpose violates the Eighth Amendment."); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (prisoner stated cognizable Eighth Amendment claim where he alleged physical assault by prison official during a controlled strip search that prisoner was not resisting); *Navarro v. Bach*, No. 04-cv-2013-J-AJB, 2008 WL 4492606, at *6 (S.D. Cal. Sept. 29, 2008) (beating a restrained prisoner without provocation, even if it involved a *de minimis* use of force, is "repugnant" and violates the Eighth Amendment); *Moore v. Stepp*, Co. C 11-05395 CW (PR), 2014 WL 2451893, at *8 (N.D. Cal. Jun. 2, 2014) (choking inmate without provocation constitutes excessive force under the Eighth Amendment).

**4. Deliberate Indifference (Counts One and Two) – Defendants Rodriguez, Luna, and Costello**

"Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (internal quotation marks and citations omitted). "Th[e] second prong—defendant's response to the need was deliberately indifferent—is satisfied by (a) a purposeful act or failure to respond to plaintiff's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (internal citations omitted).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). An "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983. *Id.* at 1096 (citing *Estelle*, 429 U.S. at 105). An inmate must "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (internal citation omitted). To satisfy this subjective component of deliberate indifference, an inmate must show that prison officials "kn[ew] of and disregard[ed]" a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994). Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." *Toguchi*, 391 F.3d at 1057 (citing *Farmer*, 511 U.S. at 837).

Across Counts One and Two, Dunn alleges that Rodriguez, Luna, and Costello were deliberately indifferent to serious pain he experienced due to Rodriguez's alleged manipulation of his genitals around 9:00 a.m. the day of the incident. (Doc. No. 1 at 5, 7.)

His requests for immediate medical care were denied by all three men, and he did not receive care until two to three hours later when he contacted local nursing staff whom Dunn says were able to conclude his genitals were bruised. (*Id.*) Dunn's claim as pleaded falls for short of alleging facts that could satisfy either prong of a deliberative indifference claim. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (mere delay in medical treatment, absent a showing of resulting substantial harm, is insufficient to support an Eighth Amendment violation). Therefore, the deliberate indifference claim is dismissed with respect to all three Defendants.

**5. Retaliation**

To the extent Dunn may also be attempting to assert a claim of First Amendment retaliation, his Complaint fails to include facts sufficient to support such a violation. A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Prisoners' First Amendment rights encompass their right to file prison grievances," *Clinton v. Cooper*, 781 F. App'x 582, 585 (9th Cir. 2019), and to "'pursue civil rights litigation in the courts,'" *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (quoting *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995)). "[B]ecause purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*; *see Watison*, 668 F.3d at 1114 ("Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so.").

To state a viable claim for First Amendment retaliation in the prison context, a plaintiff must allege the following:

> that (1) "the retaliated-against conduct is protected," (2) the "defendant took adverse action against plaintiff," (3) there is a "causal connection between the adverse action and the protected conduct," (4) the act "would chill or silence a person of ordinary firmness," and (5) the conduct does not further a legitimate penological interest.

*Davis v. Powell*, 901 F. Supp. 2d 1196, 1213 (S.D. Cal. 2012) (quoting *Watison*, 668 F.3d at 1114). "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison*, 668 F.3d at 1114.

Here, Dunn has pleaded insufficient facts to plausibly sustain any free-standing retaliation claim. It is true that Dunn states that Romero used epithets to misidentify Romero to other prisoners on the date of the incident and after. (Doc. No. 1 at 8.) But he does not plead a causal connection between any First Amendment-protected action (such as filing an administrative grievance with prison officials) and Romero's conduct toward him. Therefore, any First Amendment retaliation claim is dismissed.

**D. Summary and Dunn's Options**

In sum, while Dunn's Eighth Amendment claims against Rodriguez and Romero are sufficiently pleaded, his Complaint requires dismissal with respect to Luna and Costello. It also requires dismissal with respect to his claims of deliberate indifference and retaliation. Since it is not "absolutely clear" that Dunn cannot fix his pleading deficiencies, *see Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015), he has two options: (1) Dunn may simply notify the Court of his intent to proceed only with the Eighth Amendment claims he has adequately alleged against Defendants Rodriguez and Romero; or (2) Dunn may file an amended complaint that includes his adequately pleaded claims ***and*** corrects his deficiencies of pleading with respect to both Luna and Costello and his deliberate indifference and implied retaliation claims. **Dunn must choose one of those two options within 45 days of the date this Order is filed.**

If Dunn notifies the Court that he wishes to proceed only with his Eighth Amendment claims against Defendants Rodriguez and Romero only, the Court will direct the Clerk to issue a summons upon them and order the U.S. Marshal to effect service upon Rodriguez and Romero on his behalf pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3). But his insufficiently pleaded claims against Luna and Costello and the claims of deliberate indifference and retaliation will remain dismissed from this action. If Dunn

instead chooses to file an amended complaint, that pleading will be subject to another preliminary screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) before the Court determines whether U.S. Marshal Service upon any Defendant is warranted. If Dunn does nothing, the Court will dismiss the case based on his failure to prosecute in compliance with a court order.

## III. Conclusion

Thus, for the reasons explained, the Court:

1. **GRANTS** Dunn's Motion to Proceed IFP (Doc. No. 2).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect the $350 filing fee owed in this case and forward monthly payments from Dunn's account to the Clerk of the Court as required by 28 U.S.C. § 1915(b)(2).

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** all claims against Luna and Costello and the claims of deliberate indifference and retaliation based on Dunn's failure to state a plausible claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

5. **GRANTS** Dunn forty-five (45) days' leave from the date of this Order in which to either: (A) file a Notice of Intent to Proceed with his Eighth Amendment claims against Rodriguez and Romero only; ***or*** (B) file an amended complaint that corrects the deficiencies of pleading identified in this Order. If Plaintiff files a Notice of Intent to proceed against Rodriguez and Romero only, he may include a request that the U.S. Marshal effect service of summons and his original Complaint on Rodriguez and Romero pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3).

If Dunn instead chooses to amend, his new pleading must be clearly titled as his amended complaint, contain S.D. Cal. Civil Case No. 26-cv-4641-AJB-SBC in its caption, and be complete in itself without reference to his original Complaint. Defendants not named and any claim not realleged in Dunn's amended complaint, *including the currently*

*sufficient Eighth Amendment claims alleged against Rodriguez and Romero in his original Complaint*, will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

If Dunn fails to file an amended complaint within the time provided or otherwise comply with this Order, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: September 8, 2026

Hon. Anthony J. Battaglia
United States District Judge